UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80976-CIV-MIDDLEBROOKS/BRANNON

STEPHANIE RITCHIE,
    Plaintiff,

vs.

MUELLER SERVICES, INC. d/b/a MUELLER
REPORTS COMPANY,
    Defendant/Third-Party Plaintiff

vs.

WILLIAM PITTS,
    Third-Party Defendant.
_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION

THIS CAUSE comes before the Court upon Plaintiff Stephanie Ritchie's ("Plaintiff") Motion for Class Certification (DE 55), filed March 4, 2013. Defendant/Third-Party Plaintiff Mueller Services, Inc. d/b/a Mueller Reports Company ("Mueller") filed a Response (DE 75) on March 21, 2013. Third-Party Defendant William Pitts ("Pitts") also filed a Response (DE 77) on March 21, 2013. Plaintiff filed a Reply (DE 84) on April 1, 2013. Additionally, I allowed Mueller to file a Supplemental Memorandum (DE 99) on April 10, 2013, to which Plaintiff filed a Reply brief (DE 101) on April 12. I have reviewed the Motion, Responses, Reply, supplemental briefings, and record in this case, and I am otherwise fully advised in the premises.

**I.    Background**

Plaintiff filed her initial Complaint (DE 1) on September 11, 2012, individually and on behalf of a putative class of Florida residents, against Defendant Mueller, a New York corporation that

1

conducts home inspection services for Citizens Property Insurance Corporation ("Citizens").

The Complaint alleges that Plaintiff was insured by Citizens, which informed her that, effective May 14, 2011, her homeowner's insurance would not be renewed unless an inspection of the premises was performed. (DE 1 at ¶ 11). Accordingly, on or about March 4, 2011, Plaintiff hired an inspector[1] who conducted a Uniform Wind Mitigation Inspection ("UWMI") of her residence using a standard Office of Insurance Regulation ("OIR") 1802 Form, which had been last updated in February of 2010.[2] The completed 1802 Form (Rev. 02/10) was submitted to Citizens, which accepted the inspection form and insured Plaintiff's residence, effective May 2011, with a premium that reflected certain credits – or discounts – based on her residence's "wind mitigation" features discovered during the inspection of the home. (*Id.* at ¶ 14). Florida Statutes Section 627.0629 requires insurers to grant these "wind mitigation" credits to insureds "who install or implement windstorm damage mitigation techniques . . . to their properties to prevent windstorm losses." Fla. Stat. § 627.0629. At the time of the inspection, the named insured was Milton Dereyna, and the premium was $1,877. (DE 1-2 at 2). According to Citizens's Personal Lines Underwriting Supervisor, Allison Horsley, the wind mitigation credits were granted based on the DMI inspection for predominant roof covering, roof deck attachment, roof to wall attachment, and opening protection. (*See* DE 59-1 at ¶ 11).

On or about January 25, 2012, an agent for Citizens informed Plaintiff that it would be conducting a re-inspection of the residence to verify the wind-resistive features qualifying the

---

[1]The original inspection was conducted by Joe Aufenanger of Don Meyler Inspections ("DMI").

[2]Although the Complaint alleges that the first inspection was done at Plaintiff's expense, the attachments to the Complaint indicate that Plaintiff was not the insured at the time of the first inspection, and only Milton Dereyna, Plaintiff's step-father, is listed on the inspection forms.

residence for wind mitigation credits, and refusal of the inspection would result in the removal of the wind mitigation credits. (DE 1 at ¶ 15). Citizens ordered a re-inspection of the residence from Mueller, and Mueller assigned the re-inspection to Third-Party Defendant Pitts. At all relevant times, Pitts was a State Certified and licensed residential contractor hired by Mueller as an independent inspector to conduct inspections pursuant to its contract with Citizens.

Pitts, having contracted with Mueller, conducted the re-inspection on May 4, 2012, using an 1802 Form that had been revised in January of 2012.[3] According to the Complaint, the 1802 Form completed by Pitts and Mueller contained "numerous false statements," and resulted in Citizens's revocation of Plaintiff's wind mitigation credits, notwithstanding the fact that Plaintiff did not make any material changes to the residence, nor did she make any claims between the dates of the original inspection and the re-inspection. (*Id.* at ¶¶ 16-19). The removal of the wind mitigation credits allegedly caused a $1,771 increase to Plaintiff's premium. (*Id.* at ¶ 19). The Complaint further alleges that this re-inspection was part of a larger scheme by Citizens and Mueller to re-inspect homes with wind mitigation credits for the sole purpose of determining that the residences do not qualify for such credits. (*Id.* at ¶¶ 25-28).

Plaintiff's Class Action Complaint alleges fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-.213 (Count III). In the instant Motion, Plaintiff seeks to certify a Rule 23 damages class as follows:

> Florida homeowners who are/were insured with Citizens Insurance Company during

---

[3]The 1802 Form that was revised in January 2012 contains different inspection criteria that Mueller invokes as one of two causes (the other being a change in Citizens's underwriting criteria) for any discrepancy between the original inspection and the re-inspection.

3

> the class period, had their homes re-inspected by Defendant Mueller Services and, as a result of that re-inspection report, had windstorm mitigation credits wrongfully removed from their Citizens policy, and had their premiums increased or were otherwise damaged.

(DE 55 at 20).

## II. Class Certification Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545 (1979)). "A party seeking class certification must affirmatively demonstrate compliance with [Federal Rule of Civil Procedure 23][,]" *id.* at 2551, and "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citations and internal quotation marks omitted). "Although the trial court should not determine the merits of plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003). Thus, a district court may "probe behind the pleadings before coming to rest on the certification question[,]"[4] as "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551; *accord Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.12 (1978) ("The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' . . . '[T]he more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'") (internal citations

---

[4] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982).

4

omitted).

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in [Rule 23(a)], as well as at least one of the requirements set forth in Rule 23(b)." *Vega*, 564 F.3d at 1265. In addition, "[a] plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23." *Abby v. Paige*, 282 F.R.D. 576, 578 (S.D. Fla. 2012) (citing *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D. Fla. 2009)). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187.

Under Rule 23(a), a putative class may only be certified if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As to Rule 23(a)(1)'s numerosity requirement, the Eleventh Circuit "has [] made it abundantly clear that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and a plaintiff is not permitted to make a purely speculative showing that numerosity has been met." *Abby*, 282 F.R.D. at 578 (citing *Kelecseny*, 262 F.R.D. at 669); *see also Vega*, 564 F.3d at 1266-67. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The

Rule 23(a)(3) typicality requirement is similar to the commonality requirement but distinguishable because, "[a]lthough typicality and commonality may be related," the two concepts have been distinguished in that "[t]raditionally commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega*, 564 F.3d at 1275 (quoting *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1146 (11th Cir. 2001)). Further, Rule 23(a)(4) mandates that the named plaintiff must prove that (1) no conflict of interest exists between her and the putative class members and that (2) the action will be vigorously prosecuted. *See Sonsa v. Iowa*, 419 U.S. 393, 403, 95 S. Ct. 553, 559 (1975).

If the threshold issue of Rule 23(a) has been resolved, courts must then determine whether the proposed certification of a class satisfies the requirements of Rule 23(b). However, in this case, because the Court concludes that class certification does not meet the Rule 23(a) prerequisites, it is unnecessary to reach the Rule 23(b) analysis.

With these requirements in mind, I turn to the question of certification.

### III.  Discussion

####   A.  *Class Definition*

Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered. *See Kelecseny*, 262 F.R.D. at 667 (citing *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006)). "In order for a party to represent a class, the class sought to be represented must be adequately defined and clearly ascertainable." *Id.* (quoting *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 301 (S.D. Ala. 2006)). "[A] vague class definition portends significant manageability problems for the court." *Id.* (quoting *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001)).

With the instant Motion, Plaintiff asks the Court to certify the following class:

> Florida homeowners who are/were insured with Citizens Insurance Company during the class period, had their homes re-inspected by Defendant Mueller Services and, as a result of that re-inspection report, had windstorm mitigation credits wrongfully removed from their Citizens policy, and had their premiums increased or were otherwise damaged.

(DE 55 at 20).

According to Plaintiff, "the number of affected consumers [or class members] is at least in the many thousands." (*Id.* at 13). Plaintiff bases this assertion on the fact that Mueller conducted over 126,000 re-inspections as part of Citizens's re-inspection initiative, and over 89,000 Mueller re-inspections have resulted in increased premiums in excess of $73 million. (DE 55 at 3, 13). However, after extensive discovery in this case, Plaintiff offers no support for the notion that "many thousands" of the 89,000 premium increases were "wrongful."

Additionally, the class as defined by Plaintiff is vague and would be difficult to ascertain. First, the Court sees an issue with the term "wrongfully." This adverb is associated with the removal of credits, an act done by Citizens, which is not the subject of this action. Rather, at issue here are the alleged false statements or omissions on the inspection forms completed by Mueller, and some improper motive to falsify inspection forms. However, Plaintiff's class definition opens the class to insureds who may have been harmed by "wrongful" conduct by Citizens.

Second, detailed factual inquiries by the Court would be required to identify and verify members of the class. For example, verifying class membership would require proof of ownership and insurance during the class period,[5] in addition to a review of the original inspection and its

---

[5] Notably, it is unclear whether Plaintiff would actually fit within her class definition, as she was neither a homeowner nor a policy-holder at the time of the original inspection.

7

reliability, along with a review of the Mueller inspection, while keeping in mind that many of the original inspections were completed using different 1802 Forms from those used in the re-inspection. In reviewing the Mueller re-inspection, the Court would essentially have to reach the merits of each claimant's case by determining whether the re-inspection contained false statements or inaccuracies when submitted to Citizens. Then, the Court would have to reach a determination as to whether windstorm credits were "wrongfully" removed from the policy by Citizens as a result of the false re-inspection by Mueller. Adding to this detailed factual inquiry is the fact that Mueller contracted with independent inspectors to conduct the re-inspections. Thus, the determination of whether windstorm credits were improperly removed may require testimony of each independent inspector and his or her recollection of each property inspected. This may also add administrative obstacles if Mueller impleads each independent inspection contractor, as it has done with Plaintiff's case.

Based on the above, Plaintiff's proposed damages class does not appear well suited for class certification from the outset.

B. *Numerosity*

In this case, numerosity is, at best, speculative. Plaintiff asserts in her Motion that numerosity is "clearly satisfied" "based on the number of homeowners, re-inspections, and increased premiums charged as a result of the re-inspections[.]" (DE 55 at 13). Thus, Plaintiff claims, "the number of affected consumers is at least in the many thousands." In addition to her estimate of "thousands" of putative class members, Plaintiff cites to two examples of insurance policyholders whose premiums were allegedly raised due to improper re-inspections by Mueller. (*See id.* at 6).

In response, Mueller argues that of 180,000 inspections conducted by three venders[6] as of

---

[6]Mueller was one of three venders conducting the re-inspections for Citizens.

April 30, 2012, only 3.53% of the policyholders disputed the findings.[7] Of the 3.53%, or 6,354 disputes, only 0.22% were determined by Citizens to be caused by inspector or underwriting error resulting in the improper removal of a wind mitigation credit. This, according to Mueller, results in only 13.97 instances of inspector error out of the 180,000 inspections done.[8]

Noting that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and that a plaintiff is not permitted to make a purely speculative showing that numerosity has been met, the Court finds that Plaintiff has not met her burden. Although the numbers listed by Plaintiff are high (126,000 re-inspections performed by Mueller and over $73 million in increased premiums), they alone are insufficient for the Court to make a supported factual finding that the putative class meets the numerosity requirement. Additionally, Plaintiff's conclusion does not appear to consider inspections that may have been done properly, nor circumstances which may have resulted in an increase in the premium for reasons unrelated to wind mitigation.

While Plaintiff offers evidence that Mueller inspected thousands of homes, and premiums were increased as a result of these inspections, Plaintiff provides no evidence that Mueller *improperly* inspected so many homes that joinder would be impractical. Thus, Plaintiff has failed to "prove that there are *in fact* sufficiently numerous parties." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original).

---

[7]Discovery has apparently revealed that Mueller conducted over 126,000 of the inspections in the Citizens re-inspection program.

[8]The testimony of Eric Ordway, leader of the Citizens inspection program, is provided in support of this argument. However, the testimony is unclear as to whether the 0.22% inspector error is taken from all 180,000 inspections, or whether it is taken from only the 6,354 disputed inspection findings. (*See* DE 58-8 at 68-76, 195-97). If the 0.22% is taken from the former, it results in 396 inspector errors; however, taken from the latter, it results in 13.97 inspector errors. Given the differing interpretations of the testimony, the Court accords this argument little weight.

C.  *Commonality*

With regard to the commonality of the class, Plaintiff has the burden to "demonstrate that the class members have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2251 (quotations omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Indeed, it is not just the presence of common questions that matters, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2251. To this end, the Supreme Court explained:

> What matters to class certification . . . is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2000)) (alteration in original).

To support commonality, Plaintiff asserts that there are "several issues of law or fact that are common to the Proposed Class" and provides the following examples:

> (1) Whether Defendant fraudulently or negligently misrepresented or omitted material facts in connection with the Re-Inspections; (2) whether Defendant's practices and representations made in connection with the Re-Inspections were false and/or misleading and/or violated FDUTPA; and (3) whether Defendant's conduct . . . injured homeowners and consumers and, if so, the extent of the injury."

(DE 55 at 14).

In essence, Plaintiff's proposed common questions of law and/or facts are a mere recitation of the causes of action alleged in the Complaint: fraudulent misrepresentation; negligent misrepresentation, and violations of FDUTPA. However, as stated clearly by the *Wal-Mart* Court, the fact that class members suffered violations of the same provisions of law does not satisfy the

10

commonality requirement. *See Wal-Mart*, 131 S. Ct. at 2251.

Additionally relevant are the potential factual distinctions and differing injuries amongst class members. For example, there may be instances where the original inspection was incorrect, and Mueller's re-inspection resulted in the proper removal of wind mitigation credits. Or where some class members had construction or improvements done on their residences subsequent to the initial inspection but prior to the Mueller re-inspection.[9] Moreover, the injuries amongst class members will unquestionably vary, as some class members may have made alterations to their residences in reliance on Mueller's re-inspection, while others may not have renewed their policies because of the removal of wind mitigation credits. Adding to the dissimilarities amongst class members is the fact that Mueller hired independent contractors to conduct the re-inspections, who may have completed different versions of the 1802 Forms. The many different inspectors for different class members will impede the ability to generate common answers, while also creating third-party liability issues between Mueller and each independent contractor, as in the instant case.

For these reasons, the Court finds that commonality fails.

D.  *Typicality*

"[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Cooper v. So. Co.*, 390 F.3d 695, 713 (11th Cir. 2004). With regard to this aspect of the Rule 23 analysis, the Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir.

---

[9] Also worth noting are the many factual variations that surely will exist amongst the class members' residences, as wind credits were calculated and applied on a feature-by-feature, home-by-home basis.

11

2000) (quoting *Falcon*, 457 U.S. at 156).

Plaintiff asserts that the typicality element is met here for the following reasons:

1. Plaintiff had a prior inspection performed of her property – the same type of inspection that members of the class had performed on their properties;

2. As a result of the original inspection, windstorm credits were awarded in her Citizens policy – the same type of windstorm credits that members of the class were awarded in their policies;

3. Plaintiff had a subsequent re-inspection of her home performed by Mueller within 5 years of the prior inspection – the same type of re-inspection that members of the class had performed on their properties by Mueller;

4. As a result of the Mueller re-inspection report, Plaintiff had windstorm credits wrongfully removed from her Citizens policy – the same type of windstorm credits that members of the class had wrongfully removed from their policies; and

5. As a result of the removal of windstorm credits, Plaintiff's insurance premium was raised – the same type of increased premium that members of the class saw on their policies.

(DE 55 at 15). Plaintiff also asserts that all class members' legal theories are the same, "even though there may exist small factual differences between one member's claim and another." (*Id.* at 16).

Mueller and Pitts argue that Plaintiff does not meet the typicality requirement because she does not possess the same interests and suffer the same injuries as class members. Specifically, Mueller and Pitts point to the uncontested fact that Plaintiff was not a homeowner at the time of the first inspection, nor was Plaintiff a policyholder at the time of the first inspection. Mueller notes that Plaintiff did not own the house until December of 2011. Also, Plaintiff's damage claim is an increased premium of $1,771, calculated by comparing the 2012 policy with the 2011 policy. "However, when the 2011 premium was calculated, Plaintiff did not own the house, was not an insured under the Citizens policy, had no insurable interest[,] and was not contractually obligated

to pay the premium." (DE 75 at 15). Therefore, Mueller contends, "allegations of having to pay the increased premium are fictional." (*Id.*).

While mere factual differences within the class generally do not make a claim atypical, the Court is concerned that the factual position of Plaintiff markedly differs from that of other putative class members. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Typicality . . . does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class."). Indeed, the record conflicts with several of Plaintiff's grounds for typicality. For example, it wasn't *her* property on which the first inspection was completed, nor was she a policyholder at the time of the first inspection. Also, windstorm credits were not originally applied in *her* Citizens policy; rather, it was Milton Dereyna's Citizens policy. While these issues render Plaintiff's factual position markedly different, they also cast doubt as to whether Plaintiff has suffered the same injury as the putative class members.[10]

For these reasons, the Court finds that typicality fails.

E.  *Adequacy*

Adequacy of representation under Rule 23(a)(4) "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189. While Pitts argues that Plaintiff is not an adequate class representative because she does not share common interests with putative class members, (*see* DE 77 at 14), there has been no showing

---

[10] Also making Plaintiff's claim atypical and individualized is that her claim for damages – $1,771.00 in increased premium – is almost double the amount alleged to be the class' average premium increase. (*See* DE 55 at 3).

that substantial conflicts of interest exist between Plaintiff and the putative class, nor has there been any argument that Plaintiff will not "vigorously prosecute the interests of the class through qualified counsel." *See Piazza*, 273 F.3d at 1346.

Nevertheless, since I find that the other Rule 23(a) requirements cannot be demonstrated, I decline to make a finding on adequacy.

## IV. Conclusion

After careful consideration of the Parties briefs and the record, the Court finds that Plaintiff has provided insufficient evidence to satisfy the Rule 23(a) requirements of numerosity, commonality, and typicality. Given such, class certification fails, and the Court need not reach the merits of the Rule 23(b) conditions.

Further, having determined that this matter is inappropriate for class certification, this Court no longer has jurisdiction pursuant to 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000.00 and is a class action. Nor does this Court have diversity jurisdiction over Plaintiff's individual claims, as the record is clear that Plaintiff cannot satisfy the $75,000.00 threshold required for diversity jurisdiction. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification (DE 55) is **DENIED**.

It is further

**ORDERED AND ADJUDGED** that this case is **DISMISSED** for lack of subject matter jurisdiction. All pending motions are **DENIED** as moot, and the Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this ___ day of April, 2013.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record